The supreme court of this state by a series of decisions, commencing with the case of the Goshen Turnpike Company v.Hurtin, (9 John. 217,) has uniformly held that the mere provision in the charter of incorporated companies, similar to the one in this case allowing the forfeiture of the stock and previous payments, does not deprive the company of their common law remedy, by action to recover from the stockholder the amount of his subscription. (14 John. 238.) In this case they have gone further, and held that although the company exercised the right conferred by the statute and forfeited the stock, they may still recover in an action upon the subscription, unless the value of the stock was equal to the amount due upon the subscription. They liken this case to that of a mortgage, and say, that when the mortgagee takes the thing pledged and sells it, or finally converts it to his own use, he is paid so much only *Page 340 
towards his debt, as the thing sold for, or was worth at the time of the conversion, and cite 5 Cowen, 380; 9 id. 346; 4Wend. 381; 11 id. 106; and when the equity of redemption is released, or a strict foreclosure resorted to in any form, then so much is paid as the value of the thing mortgaged, at the time when the title became absolute in the mortgagee, amounts to. This is no doubt the true rule in the case of a mortgage of real or personal estate, and if the company are to be deemed a mortgagee of the stock, and both parties entitled to the rights of mortgagor and mortgagee, I think it would be decisive in favor of the plaintiff.
But I do not think this is to be regarded in the light of a mortgage. Upon a foreclosure and sale of property mortgaged, if it bring more than the debt the mortgagor is entitled to the surplus. But no provision is made for the company's refunding the surplus in this case. And if the company after forfeiture should sell the stock for a sum beyond the amount unpaid thereon at the time of forfeiture, the defendant could not recover such surplus. Again, in all cases of a mortgage, the mortgagor has in equity a right of redemption until a strict foreclosure, or a foreclosure and sale of the mortgaged property. But no such remedy exists for the redemption of stock forfeited under the provisions of a statute like the one in question. Judge Story (Eq. Juris. § 1325,) says that courts of equity in cases of non-compliance by stockholders, with the terms of payment of their instalments of stock at the times prescribed, by which a forfeiture of their shares is incurred under the by-laws of the institution, have refused to interfere, by granting relief against such forfeiture. And such was the ruling of the court of chancery in England, inSparks v. The Liverpool Water Works Company, (13 Ves. 428.) When a penalty or forfeiture is imposed by statute upon the doing or omission of a certain act, courts of equity will not interfere to mitigate the penalty or forfeiture incurred, for it would be in contravention of the direct expression of the legislative will. (Story's Eq. Juris. § 1326; 1 Strange. 447.) I cannot see how this can upon principle be regarded as a mortgage. On the contrary, it has I think, more of the properties *Page 341 
of a conditional sale, when the absolute title does not pass until payment in full.
Where a party subscribes for stock, he takes it upon, and subject, to the condition imposed by statute; that the corporation may, if he omits to pay the instalments as they are called for and become due, forfeit the stock and all previous payments. It is then left optional with the corporation whether they will prosecute on the subscription, or forfeit the stock and previous payments. The corporation may doubtless take which ever remedy they elect. But if they elect to forfeit and take back their stock, it seems to me they should not be permitted also to sue and collect the price agreed to be paid, or any part thereof. In that case they take back the whole consideration for the subscriber's promise, with the right to retain whatever may have been paid. It would, after that, be inequitable and unjust to permit them to retain the stock and still prosecute. And it can make no difference that the instalments for which the suit is brought became due before the forfeiture was declared. The statute simply authorizes a forfeiture of the stock and all previous payments made thereon; but does not declare that the party shall also forfeit the amount of payments which may have become due and remain unpaid.
On the argument of the cause in this court, it was claimed by the counsel for the plaintiffs, that their right to recover upon the subscription, notwithstanding the forfeiture, was like that of a landlord taking possession of demised premises for the non-payment of rent; and it was urged that, although by such act the relation of landlord and tenant is determined, yet the right of action for which the rent accrued is not taken away. (Hinsdale v. White, 6 Hill, 507.) But in that case, the tenant only contracts for the use of the demised premises for a particular term. He does not contract for the purchase of the property itself. The landlord therefore only takes back the unexpired term for which the premises were demised, and there is no reason why the tenant, who was in default, should not pay rent for the time he actually occupied the premises. But I am not aware that it has ever been held that the landlord, in such a case, could recover the rent agreed to be paid by the tenant for that portion *Page 342 
of the term which remained after the re-entry; nor that he could recover the difference between the amount agreed to be paid for the remainder of the term, and the actual value of the use of the premises during that time, if such value was less than the sum agreed to be paid therefor. But such a rule of damages must be adopted in that case, to make it analogous to the principles laid down by the supreme court, for a recovery in the case now under consideration.
I think, as I have before stated, that this case is more analogous to a contract for the purchase and sale of property, where the vendor reserves the right, on default of payment at the time stipulated, to rescind the sale or forfeit the contract and previous payments. Suppose a person agrees to sell personal property, one-third of the purchase money is paid down, and the purchaser agrees to pay the remainder by instalments, and if he fails to make either of the payments at the time stipulated, that he will forfeit the property purchased and all previous payments made thereon; and upon such default the vendor repossesses himself of the property, and takes advantage of the forfeiture. It could hardly be pretended that he could still maintain an action for the price agreed to be paid. I do not see how such a case can be distinguished in principle from the one under consideration. I think the principles decided in Winter v.Livingston, (13 John. 54,) are equally applicable to this case.
If this view of the case is the correct one, the plaintiffs, by declaring a forfeiture of the stock, have in effect rescinded the contract, and taken back the consideration of the defendant's promise, and their right further to prosecute is at an end: and it is of no moment whether the value of the stock was more or less than the whole amount unpaid thereon. The fact that the plaintiffs had commenced their suit, and incurred costs prior to the forfeiture, cannot aid them; they were not bound to declare a forfeiture, but having done so, they must abide the consequences of their own act in that respect.
The judgment of the supreme court should be reversed, and the defendants should have judgment on the demurrer.
RUGGLES, CADY, STRONG and SHANKLAND, Js, concurred. *Page 343 
JEWETT, C.J. and BRONSON, J. dissented, and the former delivered his opinion as follows.